COASTAL READY-MIX CONCRETE CO., INC., PETITIONER-APPELLEE v. BOARD OF COMMISSIONERS OF THE TOWN OF NAGS HEAD, CHARLES D. EVANS, MAYOR, JOSEPH E. POOL, COMMISSIONER, DONALD W. BRYAN, COMMISSIONER, RONALD E. SCOTT, COMMISSIONER, AND J. FRED HILL, COM-MISSIONER, RESPONDENT-APPELLANTS

No. 781SC654

(Filed 5 June 1979)

Municipal Corporations § 30.6 — entitlement to conditional use permit

The evidence supported the trial court's determination that petitioner had met all the requirements of a town ordinance to obtain a conditional use permit for a ready-mix concrete plant and that it was, therefore, entitled to such permit.

APPEAL by respondents from *Fountain, Judge.* Judgment entered 20 April 1978 in Superior Court, DARE County. Heard in the Court of Appeals 3 April 1979.

Petitioner Coastal Ready-Mix Concrete Co., Inc. (Ready-Mix) applied to respondent Board of Commissioners of the Town of Nags Head (the Commissioners) for a conditional use permit to allow petitioner to locate its concrete plant on a site of 2.97 acres, which is within a C-2 Commercial Zone. The Nags Head Planning Board thoroughly reviewed petitioner's request and recommended approval. The Commissioners received evidence from petitioner for a conditional use permit on 4 January 1978. At this hearing, the petitioner presented evidence which tended to establish that petitioner had met all of the requirements and conditions necessary under the pertintent sections of the Nags Head Zoning Ordinance to be granted a conditional use permit.

On the question, whether or not the petitioner met the 35 foot height limitation in a C-2 Commercial Zone, the evidence offered tended to show that the 35-foot limitation was violated only by the concrete plant's conveyor and appurtenant structure which was a mechanical bin.

A question arose as to whether or not the petitioner had met the requirements of the subdivision ordinance and the public access requirements included therein. Petitioner offered evidence tending to show that the only property to be transferred to it was that called for in the site plan which consisted of 2.97 acres. The Commissioners denied petitioner's application for a conditional use permit.

On 16 January 1978, Judge Fountain allowed petitioner's application for writ of certiorari, and after a hearing before him, entered judgment that petitioner has shown as a matter of law that it was entitled to the conditional use permit. Judge Fountain directed that the respondents issue such permit. From this judgment, respondents appealed.

*White, Hall, Mullen, Brumsey & Small, by Gerald F. White, for petitioner appellee.*

*Kellogg & White, by Thomas N. Barefoot, for respondent appellants.*

ERWIN, Judge.

On this appeal, respondents contend that the trial judge erred in its conclusion that petitioner was entitled to a conditional

use permit as a matter of law that would allow petitioner to locate its concerete plant in a C-2 General Commercial District in the Town of Nags Head. We agree with the judgment entered by the trial court and affirm.

The zoning ordinance in question is Section 7.06 C(4) of the Town of Nags Head, which provides:

"C. Conditional Uses

The following uses shall be permitted subject to the requirements of this district and additional regulations and requirements imposed by the Board of Commissioners as provided in Article X.

                         *    *    *

(4) Manufacture, storage and sales of ready mix concrete, concrete products and storage and sales of building materials provided that the following conditions are met:

a. The site must contain at least two (2) acres.

b. The site must be no less than 200 feet from a major thoroughfare.

c. No portion of a structure or processing area may be located within 50 feet of the site boundary, and no material storage area within 25 feet of the site boundary.

d. The boundaries of the site must be fenced no less than six (6) feet in height and buffered with dense natural vegetation which is not less than ten (10) feet in height. Where natural vegetation does not provide sufficient screening, the boundaries of the site must be planted with dense vegetation which will reach a mature growth of eight (8) to ten (10) feet within three (3) years. Suitable plant types shall be those recommended by the U.S. Department of Agriculture for the coastal area, such as Eleagnus Pungens, Euonymus Japonicus, Pinus Thunbergi, Pittosporum Tobira, Wax Myrtle and Bayberry.

e. The Planning Board may recommend to the Board of Commissioners any additional conditions it may determine are appropriate to insure that the off-site effects of the operation are kept at a minimum."

Section 7.07 provides for a height limitation of 35 feet in a C-2 General Commercial District.

The record reveals that the following reasons were given by the Commissioners for denyng the application:

"1. It will denigrate the property values of the surrounding properties and subsequently the tax base of the town which furnishes the wherewithall to operate the town for the benefit of the citizens.

2. It is an inappropriate use in relatively close proximity to the Outer Banks Health Center, and to the Nursing Home previously approved by the Board.

3. The operation of a ready-mix concrete plant is not in harmony with the surrounding area and surrounding uses of the Zoning Ordinance, and therefore, not in keeping with the Comprehensive Land Use Plan or Section 1.03 of the Zoning Ordinance.

4. The site cannot be properly screened from adjoining property as apparently intended with the requirement of Section 10.04 C(4)(d), and the mere erection of screening devices from the majority of activity of Nags Head on a level plain does not constitute the intent of the ordinance requiring screening.

5. The activity, as proposed, does not, in fact, comply with Section 7.07 of the Zoning Ordinance in height in that the so-called bins are structures and not appurtenances.

6. The site plan shows a silo (which it has been testified has been intended for future use) of an indeterminate height, and therefore the site plan could not be approved, at least without the removal of the silo from the site plan.

7. The site falls under the requirements of the Subdivision Ordinance and as presented does not follow the provisions of the Subdivision Ordinance requiring public access.

8. Under Section 10.04 F, the Zoning Ordinance requires the Board of Commissioners to consciously address public interest in that it states in part that 'the Board of Commissioners may impose such reasonable and appropriate conditions and safeguards upon these Conditional Use permits as to insure that the spirit and intent of this ordinance is preserved and that such Conditional Use will not adversely affect the public interest'."

Petitioner and respondents joined in a stipulation that the silo, referred to in the evidence and record of proceedings herein, shall be deleted from petitioner's site plan and that reference to such silo is therefore not before the court in the consideration of this cause.

In *Refining Co. v. Board of Aldermen*, 284 N.C. 458, 468, 202 S.E. 2d 129, 136 (1974), Justice Sharp (now Chief Justice) stated for the Supreme Court:

"When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record. *See Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E. 2d 78 (1969); *Utilities Commission v. Tank Line*, 259 N.C. 363, 130 S.E. 2d 663 (1963)."

The record further reveals that: (1) A public hearing was held as required by law on this application on 7 December 1977. (2) Harry Lange, Building Inspector of the Town of Nags Head, testified on 4 January 1978:

"This is the site plan for Coastal Ready-Mix Concrete and the Planning Board, in reviewing this, found the site plan to comply with all of the requirements of the ordinance, except one, and that was the fact that the material stock piles shown on the plan do not actually scale to comply with the property lines as required and based on this, the Engineer has prepared a bisect, which you have, which reflects the 25-foot setback from the property lines, as required by the

ordinance. The Planning Board has approved this, with the condition that the stock piles be at least 25 feet, which is required by the ordinance, and that all lighting be directed to the center of the site, to keep any lighting from any adjacent property. . . .

. . . There is sufficient water available, and to the best of my knowledge all requirements have been complied with."

(3) The applicant's sworn testimony tended to establish that all of the requirements of the zoning ordinance were complied with, there being no evidence contra. (4) The testimony of those who opposed the granting of the permit did not relate to whether or not the applicant had complied with ordinances but related to the unsightliness, the noise factor, the potential for creating dust, and the general deterioration of the surrounding area if the permit were granted and the plant constructed. (5) Petitioner's site plan showed a 60-foot street on the southern track of the property, which will be dedicated as a public street as petitioner develops its plans. Petitioner's agent stated before the respondent: "I don't know whether you want to do it now or later, but I want to make it clear that there is no problem about dedicating the 60-foot easement that is required. It will be done. . . . it will be a street."

After the stipulation as set out above, which removed the question of possible violation of Section 7.07 and with the record before him, Judge Fountain's order was clearly proper and fully supported by competent evidence that petitioner had met all the requirements of the zoning ordinances of respondents. *Cf. Jarrell v. Board of Adjustment*, 258 N.C. 476, 128 S.E. 2d 879 (1963).

Judgment affirmed.

Judges VAUGHN and MARTIN (Harry C.) concur.