HUMBLE OIL & REFINING COMPANY, PETITIONER v. BOARD OF ALDERMEN OF THE TOWN OF CHAPEL HILL, JOSEPH L. NASSIF, ALICE WELSH, REGINALD D. SMITH, ROSS F. SCROGGS, GEORGE L. COXHEAD, AND JAMES C. WALLACE, RESPONDENTS

No. 7315SC227

(Filed 28 March 1973)

1. **Municipal Corporations § 30— denial of special use permit — challenge by optionee**

   An optionee of land has no standing to challenge the denial of a special use permit to allow construction of a service station on the land.

2. **Municipal Corporations § 30— special use permit — standards of ordinance**

   The standards set forth in a municipal ordinance for determining whether a special use permit would be issued by the board of aldermen were not too vague to be susceptible to definition.

3. **Municipal Corporations § 30— denial of special use permit — review of application by planning board**

   A municipal board of aldermen did not act improperly in denying an application for a special use permit before it was reviewed by the

planning board since the municipal zoning ordinance required a review by the planning board only before the issuance of such permit.

**4. Municipal Corporations § 30— denial of special use permit for service station — increase in traffic hazard**

There was sufficient evidence to support a municipal board of aldermen's denial of a special use permit to allow construction of a service station on the ground that the service station would substantially increase the traffic hazard at an intersection and thus would endanger the public safety at the intersection.

APPEAL by petitioner from judgment of *McKinnon, Judge,* filed 3 November 1972 in ORANGE Superior Court.

Petitioner appeals from judgment sustaining action of the Board of Aldermen of the Town of Chapel Hill (Board of Aldermen) denying petitioner a special use permit. The parties appear to agree on the following:

On 27 July 1971 application was made by petitioner to Board of Aldermen for a special use permit to allow construction of an automobile service station at the corner of West Franklin Street and Merritt Mill Road in the Town of Chapel Hill. Said location is in the central business district of Chapel Hill and petitioner is the owner of options to purchase or lease the property at said location.

Following duly published notice, the Board of Aldermen and the Chapel Hill Planning Board held a public hearing on 27 September 1971. A representative of petitioner appeared at the hearing and presented arguments and evidence in support of the application; other evidence was also presented. At the conclusion of the hearing, the Board of Aldermen denied the request for the special use permit for the reason that "at this time the proposed use would materially increase the traffic hazard at this intersection and increase the danger of public safety at this intersection."

Petitioner's petition to superior court for certiorari to review the action of the Board of Aldermen was allowed and the cause was heard by Judge McKinnon at the 27 March 1972 Session of Orange Superior Court. The parties agreed that judgment might be entered "out of term and out of the district."

On 3 November 1972 judgment entered by Judge McKinnon on 31 October 1972 was filed. The judgment included numerous findings of fact and conclusions of law and adjudged that the

action of the Board of Aldermen be sustained. Petitioner appealed to the Court of Appeals.

*Newsom, Graham, Strayhorn, Hedrick & Murray by K. Byron McCoy and Malvern F. King, Jr., for petitioner appellant.*

*Haywood, Denny & Miller by Emery B. Denny, Jr., for respondent appellees.*

BRITT, Judge.

[1] While respondents do not raise the point on appeal, we think we are confronted at the outset with the question of whether petitioner, as an optionee of the land on which it proposes to construct a service station, has standing to challenge the denial of its application for a special use permit. We hold that petitioner does not have that standing.

In this case the Board of Aldermen was performing a function sometimes performed by a municipal board of adjustment pursuant to former G.S. 160-178. In 5 Strong, N. C. Index 2d, Municipal Corporations, § 31, p. 692, we find:

> "While any owner whose property is affected has the right to apply to the courts for review of an order of a municipal board of adjustment, the decision of the board of adjustment is reviewable solely for errors of law on the evidence presented by the record itself. But the right to appeal to the courts is limited to persons owning an interest in the property, *and such right does not extend to an optionee.*" (Emphasis ours.)

See also Annot., 89 A.L.R. 2d 663, 680 (1963).

Since *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E. 2d 128, 168 A.L.R. 1 (1946), is cited in support of the emphasized statement from *Strong*, a close study of *Lee* is appropriate. In that case an optionee applied to the city building inspector (of Rocky Mount, N. C.) for a permit to construct on the land under option buildings suitable for and to be used as a grocery store-service station. The building inspector declined to issue the permit for the reason that the proposed buildings were designed to be used for a nonconforming purpose (business in a district zoned for residences only). Optionee appealed to the board of adjustment who, following a hearing in which

adjoining property owners opposed the application, concluded "that to reject this permit would work a great hardship on the applicant, and that no damage would be sustained by adjoining property owners if the permit were granted." The board of adjustment ordered the building inspector to issue the permit and certain adjoining property owners obtained certiorari. The superior court affirmed the decision of the board of adjustment and the property owners appealed to the Supreme Court. In an opinion by Barnhill, Justice, (later Chief Justice), the Supreme Court reversed; on page 110 of the opinion we find:

> "Acting upon its interpretation of the statute authorizing its creation, G.S. 160-172, the Board of Adjustment, upon the appeal of the respondent, 'concluded that to reject this permit would work a great hardship on the applicant,' and ordered that a permit issue. In this there was error.

> An option in relation to land grants the right to elect, within a stipulated period, to buy or not to buy. The applicant optionee merely has the right of choice granted by his option. He possesses no present right to erect a building on the lot described in his contract. To withhold from him a permit to do what he has no present right to do cannot, in law, impose an 'undue and unnecessary hardship' upon him."

At all times pertinent to *Lee*, G.S. 160-178 provided that an appeal could be taken to the board of adjustment "by any person aggrieved or by an officer, department, board or bureau of the municipality." We construe *Lee* to hold that an optionee was not sufficiently aggrieved by the denial of a permit by the city building inspector to enable the optionee to obtain relief from the board of adjustment. We think it follows that in the instant case petitioner, an optionee, was not sufficiently aggrieved by the denial of its application for a special use permit by the Board of Aldermen for petitioner to seek relief in the courts.

Although we are holding that petitioner does not have standing to challenge the denial of its application for a special use permit, we have, nevertheless, reviewed the record to the end that we might render a decision on the merits of this case. We think that Judge McKinnon's judgment should be affirmed and will discuss briefly the principal questions raised in petitioner's brief.

**[2]**  1. Petitioner contends "that the standards set out in Section 4-C-1 (f) (1), (2), (3) and (4), for determining whether an application for a special use permit shall be issued by the Board of Aldermen is too vague to be susceptible to definition," therefore, said section is invalid. It appears that the standards imposed by Section 4-C of the Chapel Hill Zoning Ordinance on the Board of Aldermen for special use permits issued by it are identical to those imposed by Section 4-B on the board of adjustment for special use permits issued by it. In *Kenan v. Board of Adjustment,* 13 N.C. App. 688, 187 S.E. 2d 496 (1972), cert. den. 281 N.C. 314 (1972), and in *Carter v. Town of Chapel Hill,* 14 N.C. App. 93, 187 S.E. 2d 588 (1972), cert. den. 281 N.C. 314 (1972), this court upheld the validity of Section 4-B. We think there is even more reason to uphold the validity of Section 4-C as it applies to the municipal legislative body rather than an administrative board. The contention is without merit.

**[3]**  2. Petitioner contends that the action of the Board of Aldermen was arbitrary and capricious, in violation of lawful procedure, and unsupported by competent, material and substantial evidence; and that the superior court erred in holding that the Chapel Hill Zoning Ordinance did not require referral of petitioner's application to the planning board for review and recommendations.

Section 4-C, 1-a of said ordinance provides as follows: "Special Use Permits *may be issued by* the Board of Aldermen for the uses so indicated in Section 4-D, Regulations for Special Use Permits, after joint hearing with the Town Planning Board and after Planning Board review and recommendations." (Emphasis added.) Section 4-C, 1-f provides that "[o]n receiving the recommendation of the Planning Board, the Board of Aldermen shall consider the application and said recommendation and either grant or deny the Special Use Permit requested."

Petitioner argues that the Board of Aldermen acted improperly in denying petitioner's application before it was reviewed by the planning board. We reject this argument. It would appear that before the Board of Aldermen could *issue* a special use permit, the application would have to go to the planning board for review and recommendations, but not where, as here, the Board of Aldermen *denies* the permit.

Petitioner further argues that the Board of Aldermen did not comply with G.S. 143-318 in conducting the meeting on

27 September 1971 and particularly in receiving evidence at said meeting. This argument is rejected for the reasons stated in *Carter v. Chapel Hill, supra.*

[4]  3. Finally, petitioner contends that the court erred in its finding of fact "to the effect that the board's finding that the traffic accident hazard at the intersection would be increased substantially by location" of a new service station on the subject property was supported by competent evidence. This contention is without merit.

At the public hearing the evidence (which was not governed by G.S. 143-318) tended to show, among other things, that the daily vehicle count at the intersection in question was 10,900, that five streets intersected at said point and that there were no electric traffic control signals at the intersection. Section 4-C, 1-f provides, among other things, that in granting a special use permit the Board of Aldermen shall find "that the use will not materially endanger the public health or safety if located where proposed and developed according to the plan as submitted and approved." We hold that the evidence fully supported the finding of the Board of Aldermen that the service station proposed by petitioner would materially increase the traffic hazard at the intersection.

For the reasons stated, the judgment appealed from is

Affirmed.

Judges MORRIS and VAUGHN concur.